Case number 14-1254, National Distribution Services, Inc. Petitioner v. United States Department of Transportation et al. Mr. Weissman for the petitioner, Ms. Lopez for the respondent. Go ahead, Mr. Weissman. Thank you, Mr. Chairman. Ladies and gentlemen, my name is Tim Weissman. I'm here representing the petitioner, National Distribution. From what I can tell, this case is a first impression on a particularly important issue for the transportation industry, and that is under what circumstances can the DOT, in this case referring specifically to the Federal Water Care Safety Administration and the Pipeline Hazardous Materials Safety Administration, under what circumstances can they issue an out-of-service order without due process protection against a motor carrier private business? The facts relevant to this case are as follows. National is a small business incorporated in Nevada. Because I'm not sure what the big legal question is. They can do it when there's an imminent hazard that needs to be redressed before they have time for a hearing. Isn't that pretty settled? Certainly, if you look at the statute and the regulations, that is what those do provide, is if there's a finding of significant likelihood of death, injury, or endangerment to a public. And you haven't challenged the statute? Correct. And you haven't challenged the validity of the regulation? Correct. So you're just challenging its application to you? Right. What the agency, in our view, has done in this case is applied a presumption, and that presumption is set forth in the light cylinder administrative decision that they rely on. Which also does not explain the source of the presumption. The one before us, and I'm asking the wrong lawyer, I'm going to ask the other judge. The case before us says there is a presumption and it's that light cylinder. If you look at the light cylinder, the light cylinder says there is a presumption, so that's nothing. So we have no explanation from the agency for the source or requisite of the presumption. That is our concern because this is a deviation from past practice of the agency. In the past, in the transportation industry, the agency has a number of enforcement tools to effectuate compliance with the regulations, most notably, as we set forth in our brief, is the Commercial Vehicle Safety Alliance North America Out-of-Service Criteria. And that sets forth which violations of both the safety regulations and the hazardous material regulations are so serious and create such a safety issue that that truck or that vehicle or that container should be removed from service. Are you challenging the lawfulness of the presumption? Yes. Where do you argue that in your brief? I read it all as applied. I think by arguing there was no evidence. That's a substantial evidence question. That doesn't mean they can't have the presumption. Are you arguing that there wasn't substantial evidence to support the presumption or that the presumption itself is unlawful? We're arguing that it is arbitrary and capricious for them to take that presumption with respect to any violation of the hazardous material regulations. It has some pretty bad effects. So your argument here, I think, has to be that the agency did not do an adequate job of explaining why the facts were sufficient to raise the vector of harm, danger to the public life or well-being, rather than that there isn't evidence. Certainly there is evidence of noncompliance and regulatory violations. There's no dispute there. I would, I guess, argue somewhat that the facts in this case are bad for National. If you look at the historical record for National, they have had a comparison to industry averages, which is what the FMCSA looks at when they issue safety ratings and determinations to motor carriers. They've had a fairly decent safety rating. But you also have here, or more specifically have here, a number of tanks on the road that have not been inspected per the regulations. Some of which, at least, have had weld repairs that were not done according to the regulations. And it doesn't seem too far-fetched to think that that could create a danger. The reason for having those inspection requirements in the first place is to protect against danger. So your facts are in this case good. I mean, maybe we could send it back so you have to do a better job of explaining why this causes the danger. But isn't it fairly reasonable to conclude that if you've got uninspected rigs out there, you've increased the danger to the public? Well, that gets into one of the issues on the factual side is these tanks were all manufactured in accordance with DOT specifications. And one of the issues with the inspection is that they had been inspected and the inspections were noted on the tanks themselves. The problem in this case is the tank inspector on some of these tanks, not all of them. Some of them had been inspected by other registered inspectors. What evidence did you have of that in the record? What evidence did you give them of actual inspection by registered inspectors of some of your tanks? We filed a motion for reconsideration after the initial decision where we submitted numerous copies of inspection. Well, that's a little late. Does the agency have to let you put in evidence you could have put in before at the motion for reconsideration stage? They did not allow our motion for reconsideration. Do they have to? They do not. Was that evidence that didn't exist at the time they initially asked for your inspection records? There was evidence presented to the agency of the inspections. There's several hundred exhibits in filing there. I believe there are some inspection records. You believe? They tell us that you didn't give them any inspection records by authorized inspectors. And you wouldn't even give them a list of all the tankers that you had. Is that accurate or inaccurate? We believe we did give them a list of all cargo tanks that were under our control. Some of those, what the confusion line in the process was that some of those tankers were permanently leased to other carriers, and so they were not included in the initial inventory of vehicles because they were not in our possession or under our control, under a leasing arrangement. As to the inspection records? As for the inspection records, as I mentioned before, Is there anything in the record you can point me to that shows you before they made their decision providing them with evidence that your tanks had been inspected by an authorized inspector whose license hadn't expired? There is evidence in the record, but again, it was submitted in conjunction with the motion for reconsideration. It's part of the joint exhibit. Let me see. I believe it is in joint exhibit 534 and 535 through 558. I think the bigger issue here is does a missing inspection create an imminent hazard? Does it create a likelihood of death, injury, or endangerment to the public? There are literally thousands of hazardous material regulations that apply to these cargo tanks, and the way I'm reading the agency's decision and presumption is that any single violation of those regulations in and of itself would be enough to constitute an imminent hazard, allowing them to place the company or place the vehicles out of service without any due process protection, which I think is overbroad and not consistent with the statutory language under 49 U.S.C. 5121D, which states that they first have to find a violation and then find that that violation causes or constitutes an imminent hazard. And here the presumption doesn't look at the individual violations to determine whether that violation is an imminent hazard. Suppose in the agency's experience one in 100 CMTVs, is that it, that have not been properly inspected and so on, have in fact hazardous conditions that do eventuate in an injury. And you have 100 vehicles out there, or 100 tankers out there, that have not been inspected. Isn't it reasonable then to think that, well, at least one of them out there is statistically likely to create a hazard, an actual event, and so we're going to have to make sure you inspect them all? I don't disagree that they all should follow the inspection, and that is a regulatory violation. Therefore, is it reasonable for them to say this is an imminent hazard? Because there are enough of them out there that it's likely enough to happen. One of the issues I see is that there's a process that the FMCSA has in its regulations that looks at the number of violations and the severity of violations and determines whether that carrier has a satisfactory safety rating, a conditional rating, or an unsat rating, and that unsat rating would then be followed by an out-of-service order after 45 days. Right after this incident, the agency did a full-blown compliance review to make that calculation, and the company received a conditional rating, which doesn't result in an out-of-service order. So I don't understand, on the one hand, how under their normal process, looking at the same violations we're looking at here, they get a conditional rating which has no operational impact on them. They didn't like that result, so they chose to pull out the other gun in their holster and issue an imminent hazard order. Well, there's no reason they can't use both guns, is there? No reason other than I don't believe there's sufficient evidence to support that the violations they found meet the definition. That may be the question, but that doesn't have anything to do with whether you've got a conditional rating under the other process, does it? You yourself style them as two separate guns. I'm not sure why it's relevant that you patch the other process. What we're hearing is that you flunked this one. That is correct, but it seems to me that in the normal process, the safety rating process, the agency having classified certain violations to be serious or acute or critical, that should be determinative on them as to whether that violation creates an imminent hazard. Why do they have to look piecemeal? I thought they were looking at the collection here of about nearly 80% of your vehicles having no inspection records by an authorized inspector given to them and unauthorized welding going on that resulted in a fatal explosion. Why can't they look at that big picture and say the combination of rampant disregard of regulatory requirements and safety requirements is the imminent hazard? Isn't that what they did here? They didn't separate it out. You want us to piecemeal it, but they took the whole package and said that's what makes this imminent. The other piece, just a comment on that, is that under the statute and regulation, the out-of-service order has to be narrow, tailored to abate the hazard itself. In their own admission, there are some of these tanks that have no safety or compliance issues. That's a separate issue. The narrow tailoring issue, they've said, come show us. You won't give us the records up front, but if you come show us, then we'll clear them, and they've, in fact, done that, haven't they? They had a supplemental order that cleared tankers when you finally came forward with some records. So why isn't that what makes this nearly tailored? Here's where the due process issue comes in. Yes, they did release some tanks after we submitted records, but then that dried up, and there's evidence in the record of e-mails where they've said we've lost trust in National, and therefore we're not going to release any more tanks, even though you've given us inspection records. They kept moving the bar farther and farther and farther, which is why we're still here today arguing the initial out-of-service order. When you say due process, do you mean constitutional due process? They're depriving National of property without due process. You have a post hoc remedy, though, right, where you can get vehicles back in service by presenting the evidence? Conceivably, though, the agency has refused to consider the supplemental records that have been submitted to release the tanks. I thought you did have some released tanks. We did. We had five tanks released. Are you challenging those decisions, or are you challenging the decision? No, we're not. You could bring it up. If they didn't clear something, you could challenge that, but that's not before us. Yeah, I agree. That is post this case. Are these vehicles, or any of them, still out of service for them to the same order? They are all out of service. What's interesting, and this might go to the imminent hazard issue, is the agency's cleared them to transport combustible product because they don't require a spec plate. So these trailers are being used to haul jet fuel, but the agency, in their view, considers it to be too hazardous to haul gasoline. Which is more combustible. Right. Yeah. Two years have passed, or almost, in July, something like that, two years. And the tanks are not rehabilitated, inspected, and tested? We cannot reach agreement on that. Every time we think we satisfy them, they change the bar on us and want something additional. Thank you. Thank you. Thank you. May it please the Court, Caroline Lopez on behalf of the government. I wanted to first address this Court's concerns with what exactly the presumption is doing here. I want to make clear that contrary to what National has said today, that the presumption never gets the agency all the way. If you're doing this, remember that I'm interested to know how the agency does get all the way. Absolutely. You may well have the evidence here, but does the opinion of the agency tell us how you got there? Yes. So all the presumption is doing is recognizing that any time there's a violation of the hazardous materials regulations, which under the statute only apply to materials that have been already deemed by the Secretary, that they may pose an unreasonable risk when they're being transported. So all it does is recognize that statutory definition. But in every case, the Secretary would always have to proceed, or here, the Chief Safety Officer, would always have to proceed to determine whether that particular risk, whether the nature and magnitude of that particular risk, was actually posing imminent hazard and whether the steps taken to abate that imminent hazard were proper. Why would we look in the safety officer's opinion? What's the JA reference that would answer that question for us? The Chief Safety Officer's opinion is that the page dealing with the imminent hazard is at JA33. 33, JA33. JA33. Isn't that just where it starts, 33? I think that's the first page of the opinion, isn't it? No. No, you're right. Imminent hazard starts on 31. I have this complaint about the whole thing. My JA begins at page 37. Oh, there's two. Three volumes. Three volumes. I only have two of the three volumes because that's the reason I'm not finding it. At JA33, the third paragraph is where the Chief Safety Officer discusses the imminent hazard. Which paragraph? The third paragraph. The paragraph that begins, in this case, not only were the provisions of the HMR being violated, but National was also engaging in unsafe practices. The Chief Safety Officer then does acknowledge the presumption, noting that what it does mean is that there is a risk pose, and then proceeds to analyze the substantial evidence of a wealth of safety violations here, which operate in conjunction to create an imminent hazard. Are you telling us about what the conclusion is? Are you telling us what the opinion actually says? Yes. What the opinion does is – No, no, no. Just tell me what it does. I want to know what it says. Page 33, which I now have located. I apologize for not having it before. The statute requires the finding of the violation and the finding of the risk before you can take action, the action you took here without a hearing. Now, you have good reference, I guess, to the violation, but what is it that tells us how the officer came up with the risk conclusion? Can you read me the part? Now, don't tell me what it does. Tell me what it says. So, one, the chief safety officer was looking both at the provisions of the HMR that were violated. I want to know what the officer said in this opinion. That's what has to justify what we affirm or reverse. The officer looked both at the violations themselves, which included – Where are you reading from? From JA-33. And that says the officer looks? Why don't you just read the key language? That's what I'm asking you to do, is read the language. Okay. The officer found, in this case, not only were the provisions of the HMR being violated, but National was also engaging in unsafe practices, and then goes on to acknowledge the presumption, which is just that violations – Now, where were you on the page? Still in the same paragraph. I'll just read the whole paragraph. Are you on 33? Yes. JA-33, third paragraph. Okay. As discussed in the matter of Light Cylinder Company, Incorporated, there is a presumption that a packaging which is not authorized for the transportation of a hazardous material in commerce presents a risk of death, serious illness, et cetera. And then the chief safety officer goes on to say, based upon the entirety of the evidence that welded repairs were being performed by National personnel at National's unauthorized facility, that a fatal accident occurred while the workers were performing unauthorized repairs in violation of Section 180.413 at the direction of National, that the only person testing National's CTMVs had an invalid registration, that FMCSA's inspection revealed that a vast majority of the CTMVs were either overdue their periodic tests or had questionable repair work done, and that the CMTVs are used almost daily to transport hazardous materials. It's not just that – the statement seems to be referring to the establishment of a violation rather than telling us whether that violation created an imminent risk. And I want to ask you first about the reference to the fatal accident. Now, that fatality did not come from the use of the tanks – I'm not going to drag you back to the acronym – the use of the tanks, but rather from an unauthorized repair of the tanks. It really has nothing to do with the imminent danger, existing or not existing, with reference to using them for the normal purpose. And I'm not seeing in the sentence that you're reading to me a great deal that tells me about why there is an imminent risk. You've got the violation, but I'm not seeing how the chief safety officer reached the conclusion  What the chief safety officer was doing there is relying on, as Judge Millett paraphrased earlier, the rampant violations of these incredibly important hazardous materials regulations. And if I might direct you to the underlying language of the particular regulations that were violated here, so in 49 CFR 180.407A, the underlying regulation itself says that if a cargo tank is overdue or has not had its testing properly done, that it's not to be put into service to carry hazardous materials. We know that. We know that. We want to know why in this – or I, in this particular – we want to know what the basis is for the CSO determining there is an imminent risk created by this violation. The CSO tells us there is a violation. You tell us there is a violation. And perhaps it should be the case that the violation creates a presumption of risk. But it doesn't make a lot of sense that the statute and then the regulation would require a first-day violation and then a risk if we're going to presume the risk from the violation. Maybe you can, but I don't know where you get that presumption from. I think what's a little bit difficult here is that the nature of these violations is so egregious that it's a little bit difficult to disaggregate the initial – Exactly. Both the nature and the volume of the violations here are so egregious that it's a little bit difficult to disaggregate. Wouldn't it have been fairly un-difficult or easy to have written a couple sentences that said that? Your view is the basic fine sentence, doesn't it? You know, we're not supposed to be on a post-doc explanation for counsel. We're supposed to have it in what we're reviewing, how the records support the conclusion. The government's view here is that although short, the chief safety officer made clear that he was finding an imminent hazard based on the totality of the overwhelming evidence of widespread violation and systemic lack of safety controls. There's another problem with that summation that he gives based upon this evidence, that X, Y, Z, and so on. One of them isn't true. Medina was not the only person inspecting the tanks. On the record... I understand that. So that leads me to the following question. Because you're going to say, well, any evidence to the contrary didn't come in until reconsideration, the petition for reconsideration, correct? No, I was actually going to say that under the governing regulations, so under 49 CFR 109.19, which govern how the petition for review works, National was in fact obligated to produce any additional evidence that it wanted to produce, and it didn't at that time produce evidence of inspections that were not. There are a number of cases in this court in which evidence comes in appropriately at reconsideration only because the opinion that's the subject of the reconsideration introduced some fact that could not be anticipated and was wrong or arguably wrong. The National was well aware at the time that it filed its petition that the issue of Mr. Medina's lapse license and the fact that he appeared on the record at the point of the initial eminent hazard order, that that was part of the basis of determining that they had not been properly inspected, and National still didn't come forward with evidence. What do you mean during the hearing? There wasn't a hearing. They didn't request a hearing, so had they wanted a hearing, National could have requested a hearing, but they didn't request a hearing. But why would they want a hearing in order to anticipate an error that hadn't yet occurred? So National was aware that the issue of whether or not they had had proper inspections was central to the, was part of the basis for the eminent hazard order, and even with that full knowledge, they failed to produce any evidence that they had actually been having their cargo tanks properly inspected. All they said is, whoops, we didn't know that Mr. Medina had had a lapse license. They didn't say in any way other people were performing hazard repairs. Put that on hold for just a second. The reconsideration petition was denied in a single sentence, I think it was. And I didn't understand the import of the sentence. Here it is. The motion is not properly before me because the decision on petition for review of emergency order issued on October 3, 2014, was a final agency decision. Why is that? I don't understand that. Reconsideration is ordinarily to reconsider what would otherwise be a final agency decision. The, in either case, it would not have been proper to reconsider here under the normal rules that apply to motions for reconsideration because National had already had ample time to produce this evidence and didn't do so. That's not in this reconsideration order. That's not the reason given for denying reconsideration. It says because this was a final agency decision. Does that mean that the time for seeking reconsideration had passed? Which would make sense of this. The issue of the validity of the denial of the motion to reconsider wasn't, hasn't been put at issue in this appeal, so it's not. There isn't a petition for review of the denial of reconsideration. There is not. And I do just want to briefly address, to say, first, we don't believe that their belated evidence is properly before this court, but also to just address what that belated evidence doesn't do and what that belated evidence doesn't do is demonstrate that there are any motor carrier tanks, that there are any cargo tanks currently under the order that the agency can possibly know. Just to back up one thing on this question of whether they knew what the problem was, the out-of-service order itself alerted them that they didn't have any records of authorized inspections, correct? That's correct. So they knew before the decision issued from the chief safety officer that they had to come forward with evidence of inspections if that basis for the out-of-service order was wrong, correct? That's correct. They didn't need to wait until reconsideration. No. So the imminent hazard order both makes clear that part of the reason that the imminent hazard order is being issued is because they don't have records of proper inspections and also makes clear that what they have to do to get these rescissions is to come forward with evidence both that the cargo tanks had these proper periodic inspections and also that there have been no unauthorized welds, which if there have been unauthorized welds, it's not just enough to say, oh, at some point we had a periodic inspection. One has to also show that there's been subsequent testing of that weld done by a registered inspector. And that's all they had to do here, and they've never done it. And just in terms of the additional evidence that they tried to submit, we discussed that evidence at pages 30 through 31 of our brief. And the records they submitted, first of all, the records, one of them was for the cargo tank that actually exploded. Another was for a cargo tank that our inspector found had an unauthorized weld. And some of the other inspection records were themselves incomplete. And that just really underscores the problem here. At this point, given that even when National has self-certified that a cargo tank is good to go and said, here are our periodic inspection records, you should trust us that there are no unauthorized welds. Because we say so, the agency has subsequently determined, and this is at a comparison of JA-86 and JA-101, has discovered that there were in fact unauthorized welds and is therefore justified by saying, if you want us to release a particular cargo tank, just bring us the records and let either our inspector inspect the cargo tank to make sure that there is no unauthorized weld, or have a registered inspector at a registered facility say, there may be a weld on this tank, but I performed the proper tests and it's safe to go out on this nation's highways again. The fact that National has never done so is quite telling. And if they did come forward and their evidence was rejected, they could seek review of that determination? That's correct. If there were a final order and they'd exhausted any administrative record, they would be able to challenge a denial of a request for rescission. Thank you very much. Thank you. Mr. Wiseman, do you have any time left? Okay, we'll give you two minutes, Mr. Wiseman. Did you appeal the denial of reconsideration? We did not. And one thing on the administrative process I just wanted to point out is when we filed our appeal of that to the chief safety officer, all we had was the five-page out-of-service order. Once we filed our appeal, the agency responded by filing several hundred documents that we had never seen before, and we had to request leave to respond to that, and I believe you were given ten pages to respond to so much evidence, so there was only so much record. You haven't appealed that either, right? We did not, no. Well, we appealed it to this court. No, you haven't appealed that so-called procedural impediment. Correct. The point I wanted to just highlight again is, you know, six months before this unfortunate accident happened, the company had gone through the full compliance review by the agency and received the highest safety rating. We're talking about the same tanks, the same drivers, the same management. So what changed between six months ago and then the time of this accident? It was the accident itself, and to your point, Judge, the cause of that accident was not the integrity or any violations with respect to the cargo tank. It was the unauthorized repair work that was being done before that tank had been cleaned and purged of flammable vapor. And I would submit that it properly crafted out-of-service order, which we would not object to, would be to prohibit any further violation of that particular safety. You have really the same problem as the government on that. It is irrelevant, the accident is. But that has nothing to do with whether the tanks are out of compliance and are creating a risk to some others. The government's using an irrelevant fact, but so are you, you put that fatality aside, we'd have the same case we have now. So to that point, I think the big issue is, is any violation of the hazardous material regulation allow them to presume an imminent hazard? Yeah, that's the issue here is whether relying on the presumption, or any issue at least, is whether relying on the presumption is an adequate explanation for determining that there's an imminent hazard and therefore taking them out of service without hearing it. But do they have to look at them one at a time, or can they look at the entire collectivity? Imagine not your company, but they went into some other company after an explosion, and they found out every single regulation was being violated by that company 80% of the time. Every safety regulation is being violated 80% of the time. Can they just go, this is an imminent hazard because of this rampant non-compliance? These folks have gone rogue. I would again, if every safety violation was found to be 80% non-compliance, then I think even under their safety rating methodology, that would allow them to shut that company down. Okay, and then it doesn't have to be all of them, though. Could they find that some of the most important ones are being violated in a widespread manner by some company 80% of the time and decide that that collection of violations is an imminent hazard? I would agree completely with that. My issue is that the violations that they've cited for are not the type that would create a likelihood of death, injury, or endangerment. I think that I correctly read your issue, or maybe I'm rephrasing it to suit myself, but it is not that there isn't evidence from which they could have drawn this conclusion, but that they haven't adequately explained how they drew the conclusion. Is that not really what you're saying? I don't believe that they can explain how these particular violations created a hazard. I'm not being unfair at all. That doesn't mean I'm withdrawing the fault. All right, thank you. Thank you. Case is submitted.
judges: Millett, Ginsburg, Sentelle